UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS SERUYA, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, <br><br> Defendant. | No. 16 C 10896 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Seruya filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits, a claimant must establish that he or she is disabled within the meaning of the Act.[2] *York v. Massanari*, 155 F. Supp. 2d

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standard for determining DIB is virtually identical to that used for SSI. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff protectively applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 22, 2013, alleging he became disabled on September 26, 2012. (R. at 22). These claims were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 22, 251–54). On January 14, 2015, Plaintiff, without representation, testified at a hearing before Administrative Law Judge (ALJ). (*Id.* at 22, 40–116). The ALJ also heard testimony from James Radke, a vocational expert (VE), and Nancy Seruya, Plaintiff's mother. (*Id.*).

The ALJ denied Plaintiff's request for benefits on June 26, 2015. (*Id.* at 22–33). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 26, 2012. (R. at 24). At step two, the ALJ found that Plaintiff had the following severe impairments: depression, attention deficit hyperactivity disorder ("ADHD"), schizoaffective disorder, and post-concussive disorder. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 25).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum

3

> [Plaintiff] should avoid concentrated exposure to noise as well as hazards of unprotected heights and moving dangerous machinery. He can understand, remember, and carry out simple routine work tasks throughout the normal workday. [He] can interact briefly or superficially with supervisors and coworkers. He can interact occasionally and superficially with the public. [He] can adapt to changes associated with the typical competitive work environment.

(R. at 26). The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 31). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the local economy that Plaintiff can perform, including cleaner, laundry sorter, and porter/vehicle cleaner. (*Id.* at 32–33). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (*Id.* at 33).

The Appeals Council denied Plaintiff's request for review on September 29, 2016. (R. at 2–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or,

---

that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

4

in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks

evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## V. DISCUSSION

Plaintiff contends that the ALJ's decision contains errors of law and is not supported by substantial evidence because (1) the ALJ failed to accord proper weight to the opinion of Plaintiff's treating psychiatrist; (2) the ALJ improperly assessed Plaintiff's credibility and subjective symptom statements; and (3) the ALJ failed to account for Plaintiff's limitations in concentration, persistence, and pace in formulating his RFC. (Pl.'s Mem., Dkt. 15 at 8–15).

**A. The ALJ Did Not Properly Evaluate the Treating Physician's Opinion**

Plaintiff first argues that the ALJ failed to accord proper weight to the opinions of his treating psychiatrist, Dr. Koziol. By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater

6

familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

Here, the ALJ improperly discounted the medical opinions of Dr. Koziol. It is undisputed that Dr. Koziol is Plaintiff's treating physican. The ALJ herself recognized Dr. Koziol as Plaintiff's "treating psychiatrist" who had been treating

7

Plaintiff from September 2012 through July 2014. (R 27-28). However, the ALJ gave insufficient reasons to discount Dr. Koziol's medical opinions as a treating physician.

The ALJ offered only one reason for giving Dr. Koziol's opinions "little weight": the opinions "conflict with the condition improvement and stability reflected in the treatment notes discussed above." (R. at 31). Plaintiff accuses the ALJ of "cherry-picking" and citing only to treatment notes which reflected improvement or stability. (Pl.s Mem., Dkt. 15, at 9). The Court agrees. While the ALJ need not articulate her reasons for rejecting every piece of evidence, she must at least minimally discuss Plaintiff's evidence that contradicts the Commissioner's position. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *see also Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) ("[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings, rather she must articulate at some minimal level her analysis of the evidence to permit an informed review.") (internal quotations omitted); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion."). Here, the ALJ committed the same error the Seventh Circuit has so frequently warned against: she "focused solely on the reports of stability and ignored the many complaints of persisting symptoms." *Roth v. Colvin*, N. 14 C 04406, 2016 WL 890750, at *9 (N.D. Ill. March 9, 2016) (citing *Campbell*, 627 F.3d at 306).

For example, in January 2012, Dr. Koziol noted that Plaintiff's ability to focus and concentrate fluctuated, and he was unable to persist at many tasks and jobs. (R. at 570). In June 2012, Dr. Koziol indicated that Plaintiff was only partially responsive to his medication, and that his head injury within the past year "likely exacerbated his ongoing cognitive difficulties." (*Id*. at 560). In October 2012, Plaintiff described abnormal sleeping patterns and Dr. Koziol noted that his "attention to certain aspects of the conversation was affected." (*Id*. at 533). In April 2013, Plaintiff reported that he was stable overall, but complained of ongoing headaches and stated that he was unable to complete tasks or persist with work. (*Id*. at 603). In June 2013, Plaintiff reported poor concentration even with the medication, and Dr. Koziol noted memory impairment, executive functioning impairment, and a "rather flat" affect. (*Id*. at 601). In August 2013, Dr. Koziol noted that Plaintiff's fund of knowledge appeared to be limited, and that there had been no change in Plaintiff's mood or affect since the previous visit (where his affected was noted to be flat). (*Id*. at 599). Similarly, in October 2013, Dr. Koziol again noted a flat, blunted affect, (*Id*. at 641), and in April 2014, Dr. Koziol observed that Plaintiff's thought process appeared to be mildly pressured at times. (*Id*. at 638).

The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham v. Colvin*, 765 F. 3d 685, 697 (7th Cir 2014). Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott,* 647 F.3d at 740. By failing to address the evidence in Dr. Koziol's treatment notes

supportive of a disability finding, the Court cannot determine whether the ALJ considered this evidence in making her determination.

In addition to his "cherry-picking" argument, Plaintiff also asserts that the ALJ ignored the relative nature of the terms "improvement" and "stable" in reviewing Dr. Koziol's treatment notes. (Pl.'s Mem., Dkt. 15, at 10). Again, the Court agrees. It is true that many of Dr. Koziol's treatment notes refer to Plaintiff's overall condition as "stable." But "stable" merely means that Plaintiff's condition is unchanged; "it does not address the level of what his condition was." *See Barnes v. Colvin*, 80 F. Supp. 3d 881, 889 (N.D. Ill. 2015). "A person can have a condition that is both 'stable' and disabling at the same time." *Hemminger v. Astrue*, 590 F.Supp.2d 1073, 1081 (W.D. Wis. 2008); *see also Barnes*, 80 F. Supp. 3d at 889 ("Plaintiff could have been 'stable' and non-functional, or 'stable' and fully functional."). Furthermore, there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. "Improvement" by itself does not demonstrate a lack of disabling symptoms. *See Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) ("The ALJ's reliance on the stated 60% improvement is meaningless because she failed to establish a baseline from which the stated improvement can be measured . . . It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition."). In order to reject Dr. Koziol's opinion based on Plaintiff's response to treatment, "the ALJ must connect how his improvement restored Plaintiff's ability to work." *Johnson v. Colvin*, No. 15 C 9737, 2017 WL

219514, at *5 (N.D. Ill. Jan. 19, 2017); *see also Murphy v. Colvin,* 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott,* 647 F.3d at 740. The ALJ never took the additional step necessary to explain why Plaintiff's "stable" condition undermined the credibility of Dr. Koziol's opinions.

Defendant does not respond to these arguments; rather, the Defendant's only argument in support of the ALJ's analysis of Dr. Kozial's medical opinions is that Dr. Koziol's opinions do not qualify as medical opinions because the issue of disability is reserved for the Commissioner. (Def.'s Mem., Dkt. 17 at 3). As an initial matter, Defendant's argument amounts to an impermissible *post hoc* rationalization as it was not used by the ALJ. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Kastner v. Astrue,* 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace"); *Scott,* 647 F.3d at 739 ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615, F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"). Nonetheless, the Court will address this argument. While the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard medical evidence as a whole from the treating physician. *Scrogham,* 765 F. 3d at 697. Although it is true that the ALJ was not bound by Dr. Koziol's assertions that Plaintiff was too disabled to work, s*ee Garcia v. Colvin*, 741 F. 3d

758, 760 (7th Cir. 2013), Plaintiff's physical and mental ability to work full time "is something to which medical testimony is relevant and if presented can't be ignored." (*Id.*) (citing *Bjornson v. Astrue*, 671, F.3d 640, 647–48 (7th Cir. 2012)). The Court notes that Dr. Koziol's treatment records contain several other opinions regarding Plaintiff's overall condition, functional abilities, and limitations. Many of these notations by Dr. Koziol constitute treating source medical opinions, which the ALJ was required to address and evaluate. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions . . . reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restriction."). The ALJ's failure to properly evaluate these opinions warrants remand.

Further, although the ALJ is not required to give Dr. Koziol's opinion controlling weight, she must still address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ failed to address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Koziol had a relevant specialty. Multiple

12

factors favor crediting Dr. Koziol's opinions, including Dr. Koziol's specialty as a psychiatrist, the nature and extent of the treatment relationship, and the frequency of examinations. "Proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Koziol's] opinions." *Campbell*, 627 F.3d at 308. The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. SSS 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents this Court from assessing the reasonableness of the ALJ's decision. For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Koziol, which is an error requiring remand.

On remand, the ALJ shall reevaluate the weight to be afforded to the opinion of Dr. Koziol. If the ALJ finds "good reasons" for not giving the opinion controlling weight, *see Campbell*, 627 F.3d at 306, the ALJ shall explicitly "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," *Moss*, 555 F.3d at 561, in determining what weight to give the opinion.

**B. Other Issues**

Because the Court is remanding to reevaluate the weight to be given to the treating physician's opinion, the Court chooses not to address Plaintiff's other arguments. However, on remand, after determining the weight to be given the treating physician's opinion, the ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including

Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 at 817 (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [14] is **GRANTED**. Defendant's Motion for Summary Judgment [16] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated: October 17, 2017              E N T E R:

                                     _____
                                     MARY M. ROWLAND
                                     United States Magistrate Judge